**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CAPCOM CO., LTD.,<br><br>               Plaintiff,<br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A,"<br><br>               Defendants. | Case No. 25-cv-11576 |

## COMPLAINT

Plaintiff Capcom Co., Ltd. ("Capcom" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I.      JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over Capcom's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief,

sell products using infringing and counterfeit versions of Capcom's federally registered trademarks and/or unauthorized copies of Capcom's federally registered copyrighted works, including the distinctive characters embodied therein (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Capcom substantial injury in the state of Illinois.

## II. INTRODUCTION

3.      Capcom filed this case to prevent e-commerce store operators who trade upon Capcom's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Capcom's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. Capcom is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Capcom has been, and continues to be, irreparably damaged through consumer confusion and dilution of its valuable trademarks and infringement of

its copyrighted works because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.    THE PARTIES

4.    Capcom began in 1979 as an electronic game machine manufacturer and distributor. Capcom quickly built a reputation for introducing cutting-edge technology and software to the video game market. Now an industry leader in the video game industry, Capcom's legacy of historic franchises in home and arcade gaming are testaments to an unparalleled commitment to excellence. Capcom created groundbreaking franchises like Resident Evil, Devil May Cry, Monster Hunter, Ace Attorney, Mega Man, and the subject of this action, Street Fighter.

5.    *Street Fighter*, first released in 1987, is a genre-defining fighting video game that has the player character fight other player-controlled characters to see who comes out on top. Summarized in one phrase, "There's Always Someone Stronger". The *Street Fighter* series and its history is built upon glorious victories and stunning defeats of its characters and players. A main staple in the eSports community, *Street Fighter* is one of the biggest titles in the fighting game community.

6.    Street Fighter is one of Capcom's most popular franchises. Since the release of the original *Street Fighter* video game, Capcom has over forty sequels, remasters, expansions, spinoffs, and/or crossover games, eight animated television series, movies, and/or shorts, and five live adaptation movie and/or shows, with more games, movies, and series currently in production. Furthermore, the Street Fighter franchise is a popular reference in popular culture. For example, it is referenced in movies such *Wreck-It Ralph*, *Ready Player One*, and *Shrek 2,* in music such as "I Bet You Look Good on the Dancefloor" by Arctic Monkeys, and in television shows such as *Family Guy*, *Regular Show, Black Mirror,* and *Fresh Off the Boat*. The *Street Fighter* games have

sold over 50 million units worldwide. Some of the characters and character names made famous by *Street Fighter* include, but are not limited to:[1]

| | | |
|---|---|---|
| **Ryu** |  | |
| **Ken** | | |

---

[1] The characters contained within the table are not an exhaustive list of the characters embodied in Capcom's copyrighted works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within Capcom's copyrighted works, have always maintained their distinctive qualities and unique elements of expression.

| | | |
|---|---|---|
| **Chun Li** |  | |
| **Cammy** | | |

| | |
|---|---|
| **Guile** |  |
| **Zangief** | |

| | |
|---|---|
| **Juri Han** |  |
| **Akira Kazama** | |

| | |
|---|---|
| **Akuma** |  |
| **Dhalsim** | |

| | |
|---|---|
| **Sagat** |  |

7.     Before Defendants' acts described herein, Capcom launched its Street Fighter franchise and lines of products bearing its famous Street Fighter marks. Capcom has also registered a multitude of *Street Fighter* works, which include the distinctive characters embodied therein, with the United States Copyright Office (the "Capcom Copyrighted Works").

8.     The Capcom Copyrighted Works are registered with the United States Copyright Office. True and correct copies of the records from the U.S. Copyright Office website for the Capcom Copyrighted Works are attached hereto as **Exhibit 1**. The Capcom Copyrighted Works embody the distinctive characters found in paragraph 6 above.

9.     Among the exclusive rights granted to Capcom under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Capcom Copyrighted Works to the public. Since first publication, the Capcom Copyrighted Works have been used on Capcom's products and are featured on Capcom's official Street Fighter merchandise website.[2]

---

[2] www.e-capcom.com/sp/apparel/amazon/en/streetfighter.html

10. Capcom markets and sells a variety of Street Fighter branded products, including clothing, pins, snacks, plushies, figurines, toys, and video games (collectively, "Capcom Products").

11. Capcom Products have become enormously popular and even iconic, driven by Capcom's quality standards and innovative designs. Among the purchasing public, Capcom Products are instantly recognizable as such. The Street Fighter brand has become a global success and Capcom Products are among the most recognizable in the world. Capcom Products are distributed and sold to consumers through Capcom's official Street Fighter merchandise website and authorized licensees.

12. Capcom has continuously used the STREET FIGHTER trademarks, and other trademarks, and has continuously sold products under its trademarks (collectively, the "Capcom Trademarks"). As a result of this continuous use as well as the fame and popularity of Street Fighter brand, strong common law trademark rights have amassed in the Capcom Trademarks. Capcom's use of the marks has also built substantial goodwill in the Capcom Trademarks. The Capcom Trademarks are famous marks and valuable assets of Capcom. Capcom Products typically include at least one of the Capcom Trademarks and/or Capcom Copyrighted Works.

13. The Capcom Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 4,042,404 | STREET FIGHTER | Oct. 18, 2011 | For: Computer game software; Computer game in the form of cartridges, cassettes, discs or tapes; Video game cartridges; Video game machines for use with television receivers; Downloadable game software; Downloadable computer |

| | | | games; Downloadable game software for playing on mobile phones; Downloadable images, moving images and music for mobile phones; Downloadable ring tones, graphics and music via a global computer network and wireless devices; Downloadable MP3 files, MP3 recordings, on-line discussion boards, webcasts and podcasts featuring music, audio books and news broadcasts; Downloadable electronic publications in the nature of comic books; Hand held joy stick units for playing video games; Player-operated electronic controllers for electronic video game machines; Computer peripherals; Protective covers for electronic devices, namely, MP3 players, video game platforms, laptop computers and video controller accessories; Cosmetic accessories for computer and video game consoles and peripherals, namely, decorative covers that can be attached and detached; computer game programs, cartridges, software, discs, and videos, DVDs and CD-ROMs featuring computer game software, Pre-recorded cinematographic films, video tapes, video cassettes, DVDs, video discs and video recordings featuring motion pictures; Cinematographic films; Action and adventure style motion picture films for broadcast on television; Interactive multimedia computer game |
|---|---|---|---|

| | | | programs in Class 009.

For: Key chains of precious metal; Watches, clocks, jewelry and imitation jewelry in Class 014.

For: Wallets; Wallet chains; Messenger bags; Business cards cases; Leather bags, suitcases and wallets; Leather key chains; All purpose sport bags; All-purpose athletic bags; All-purpose carrying bags; Backpacks, book bags, sports bags, bum bags, wallets and handbags; Bags and holdalls for sports clothing in Class 018.

For: Coffee cups, teacups and mugs in Class 021.

For: Halloween costumes, masquerade costumes and masks sold therewith; Short-sleeved or long-sleeved t-shirts; Track jackets; Hooded sweat shirts, sweat shirts; Athletic shoes; Training shoes; Underwear in Class 025.

For: Action figures and accessories therefor; Dolls and bendable figures; Trading card games; Costume masks; Playsets for dolls and action figures; Plush toys and stuffed puppets; Games, namely, paddle ball games, board games, card games, skill and action games, and bagatelle games; Pinball type games; Handheld gaming units for playing electronic games, Halloween costume masks in Clas |

| | | | 028. |
|---|---|---|---|
| | | | For: Energy drinks in Class 032. |
| 1,964,830 | STREET FIGHTER | Apr. 02, 1996 | For: computer game programs in Class 028. |
| 3,772,264 | STREET FIGHTER | Apr. 06, 2010 | For: Computer game software; computer game software recorded on DVDs and CD-ROMs; Pre-recorded cinematographic film, video tapes, video cassettes, DVDs, video discs and video recordings featuring motion pictures and entertainment related to films, namely, action adventure films; Cinematographic action adventure films; Action and adventure style motion picture films for broadcast on television; Musical and dramatic audiovisual and sound recordings on compact discs, video cassettes; Pre-recorded videotapes featuring dramatic works of fiction and music in Class 009.<br><br>For: Entertainment services, namely, providing webcasts in the fields of videogames, computer programs, entertainment and general interest via a global computer network; Internet services providing information via an electronic global computer network in the field of entertainment relating specifically to video games and computer game software in Class 041. |
| 2,720,191 | STREET FIGHTER | Jun. 03, 2003 | For: TRADING CARDS, POSTERS AND STICKERS in Class 016. |

| | | | |
|---|---|---|---|
| 2,092,311 | STREET FIGHTER | Aug. 26, 1997 | For: publications, namely, books and pamphlets pertaining to video game strategy, bookshelf comics, hardcover collections of comics in Class 16. |
| 2,152,653 | STREET FIGHTER II | Apr. 21, 1998 | For: action figures and accessories therefor; plush toys and soft puppets; card games, and hand held units for playing electronic games in Class 028. |
| 1,447,723 | CAPCOM | Jul. 14, 1987 | For: PRINTED CIRCUIT BOARD FOR ELECTRONIC AMUSEMENT MACHINES; ELECTRONIC AMUSEMENT MACHINES INCLUDING COIN-OPERATED COMPUTER GAME MACHINES EQUIPPED WITH CRT DISPLAY; PROGRAMMED DATA CARRIERS FOR ELECTRONIC AMUSEMENT MACHINES, INCLUDING THOSE IN THE FORM OF ROM CARTRIDGE, MAGNETIC DISK in Class 028. |
| 3,618,490 | CAPCOM | May 12, 2009 | For: Computer game software; Computer game in the form of cartridges, cassettes, discs or tapes; Video game cartridges; Downloadable game software; Downloadable computer games; Downloadable game software for playing on mobile phones; Screen saver software and wallpaper software; Downloadable screen saver software and wallpaper software for mobile phones; Downloadable images, moving images and music for mobile phones in Class 009. |

| | | | | For: Providing computer games to others that may be accessed via the Internet; Providing non-downloadable Internet games to others; Providing electronic games for mobile telephones via the Internet; Entertainment services, namely, providing prerecorded music, information in the field of music, and commentary and articles about music, all *online* via a global computer network; Electronic publishing services, namely, non-downloadable online publication of the text and graphic works of others featuring computer and video games and strategies thereof; Providing on-line non-downloadable newsletters in the field of computer and video games; Providing on-line non-downloadable electronic publications and documentation in the nature of articles and reports featuring computer and video game strategy; Organization of entertainment competitions for others, namely, video gaming competitions, board game competitions, musical competitions, image and video competitions, drawing competitions, and painting competitions; Motion picture theater services; Production and distribution of motion pictures in the form of films, video tapes and optical disks; Providing recreational facilities in the nature of amusement parks, amusement arcades and amusement centers; |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | Providing on-line interactive multiplayer games; Providing online information services relating to entertainment, in particular movies, music or games in Class 041. |
| 4,175,782 | **CAPCOM** | Jul. 17, 2012 | For: Video game and computer game strategy guidebooks; Video game and computer game instruction manuals; Books and magazines in the field of video game and computer game strategy; Books and magazines featuring video game and computer game; A series of books featuring fictional or fantasy stories; Comic books; Graphic novels; Trading cards and collectors cards featuring video game and comic book characters; Stationery in Class 016. |
| 4,781,985 | **CAPCOM** | Jul. 28, 2015 | For: Tops; wraps; jackets; jerseys; sweaters; nightwear; tee shirts; gloves; neckties; mufflers; caps; hats; belts for clothing; footwear; masquerade costumes in Class 025.<br><br>For: Arcade video game machines; toy figures; toy guns; action figure toys; stuffed toys; talking toys; playing cards and card games; dolls; board games; billiard equipment; slot machines in Class 028. |

14.    The U.S. registrations for the Capcom Trademarks are valid, subsisting, and in full force and effect. The registrations for the Capcom Trademarks constitute *prima facie* evidence of

16

their validity and of Capcom's exclusive right to use the Capcom Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the federal trademark registration certificates for the Capcom Trademarks are attached hereto as **Exhibit 2**.

15.     The Capcom Trademarks are exclusive to Capcom and are displayed extensively on Capcom Products and in marketing and promotional materials. The Capcom Trademarks are also distinctive when applied to Capcom Products, signifying to the purchaser that the products come from Capcom and are manufactured to Capcom's quality standards. Whether Capcom manufactures the products itself or contracts with others to do so, Capcom has ensured that its products bearing the Capcom Trademarks are manufactured to the highest quality standards.

16.     The Capcom Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of Capcom Products have enabled the Street Fighter brand to achieve widespread recognition and fame and have made the Capcom Trademarks some of the most well-known marks in the entertainment industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Street Fighter brand have made the Capcom Trademarks valuable assets of Capcom.

17.     The Capcom Trademarks have been the subject of substantial and continuous marketing and promotion by Capcom. Capcom has marketed and promoted, and continues to market and promote, the Capcom Trademarks in the industry and to consumers through Capcom's official Street Fighter merchandise website, and through authorized licensees.

18.     Capcom has expended substantial time, money, and other resources in advertising and promoting the Capcom Trademarks. Specifically, Capcom has expended substantial resources in advertising, promoting, and marketing featuring the Capcom Trademarks. Capcom Products

have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the Capcom Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Capcom. The Capcom Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Capcom Trademarks is of immeasurable value to Capcom.

19. Capcom Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Street Fighter brand.

20. Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Capcom. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

21. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Capcom to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Capcom will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

22. The success of the Street Fighter brand has resulted in significant counterfeiting of the Capcom Trademarks and infringement of the Capcom Copyrighted Works. Because of this,

Capcom has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Capcom has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms such as Amazon.com, Inc. ("Amazon"), Roadget Business PTE. Ltd. ("SHEIN"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

23.     Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

24.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing

infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

25.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Illinois.

26.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores

operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, AliPay, Amazon Pay, Stripe, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Capcom has not licensed or authorized Defendants to use any of the Capcom Trademarks and/or to copy or distribute the Capcom Copyrighted Works, and none of the Defendants are authorized retailers of Capcom Products.

27. Many Defendants also deceive unknowing consumers by using the Capcom Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Capcom Products. Other e-commerce stores operating under the Seller Aliases omit using the Capcom Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Capcom Products.

28. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

29. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

30.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

31.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as Capcom, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

32.     Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Capcom's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Capcom.

33. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Capcom, have knowingly and willfully used, and continue to use, the Capcom Trademarks and/or copies of the Capcom Copyrighted Works in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States and Illinois over the Internet.

34. Defendants' unauthorized use of the Capcom Trademarks and/or Capcom Copyrighted Works in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Capcom.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35. Capcom hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36. This is a trademark infringement action against certain Defendants[3] based on their unauthorized use in commerce of counterfeit imitations of the Capcom Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Capcom Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Capcom Products offered, sold, or marketed under the Capcom Trademarks.

---

[3] Count I applies to all Defendants who infringed the Capcom Trademarks, as outlined in Schedule A attached hereto.

37.     Certain Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the Capcom Trademarks without Capcom's permission.

38.     Capcom owns the Capcom Trademarks. Capcom's United States registrations for the Capcom Trademarks are in full force and effect. Upon information and belief, certain Defendants have knowledge of Capcom's rights in the Capcom Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Capcom Trademarks. Those Defendants' willful, intentional, and unauthorized use of the Capcom Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

39.     Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     Capcom has no adequate remedy at law, and if certain Defendants' actions are not enjoined, Capcom will continue to suffer irreparable harm to its reputation and the goodwill of the Capcom Trademarks.

41.     The injuries and damages sustained by Capcom have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

42.     Capcom hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

43.     Certain Defendants'[4] promotion, marketing, offering for sale and/or sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Capcom or the origin, sponsorship, or approval of the Unauthorized Products by Capcom.

44.     By using the Capcom Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, certain Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

45.     Certain Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46.     Capcom has no remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of Street Fighter brand if certain Defendants' actions are not enjoined.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 and 501)

47.     Capcom hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

48.     The Capcom Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*.

49.     Capcom owns the Capcom Copyrighted Works. Capcom has complied with the registration requirements of 17 U.S.C. § 411(a) for the Capcom Copyrighted Works. The Capcom Copyrighted Works are protected by copyright registration numbers which were duly issued to

---

[4] Count II applies to all Defendants who infringed the Capcom Trademarks, as outlined in Schedule A attached hereto.

Capcom by the United States Copyright Office. At all relevant times, Capcom has been, and still is, the owner of all rights, title, and interest in the Capcom Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

50.     The Capcom Copyrighted Works are published on the internet and available to Defendants online. As such, Defendants had access to the Capcom Copyrighted Works via the internet.

51.     Without authorization from Capcom, or any right under the law, certain Defendants[5] have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Capcom Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Certain Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Capcom Copyrighted Works. Such conduct infringes and continues to infringe the Capcom Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

52.     Certain Defendants reap the benefits of the unauthorized copying and distribution of the Capcom Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

53.     Certain Defendants have unlawfully appropriated Capcom's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Capcom Copyrighted Works, including the distinctive characters embodied therein.

54.     On information and belief, the certain Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Capcom's rights.

---

[5] Count III applies to all Defendants who infringed the Capcom Copyrighted Works, as outlined in Schedule A attached hereto.

55. Certain Defendants, by their actions, have damaged Capcom in an amount to be determined at trial.

56. Certain Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Capcom great and irreparable injury that cannot fully be compensated or measured in money. Capcom has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Capcom is entitled to a preliminary and permanent injunction prohibiting further infringement of the Capcom Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Capcom prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Capcom Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Capcom Product or is not authorized by Capcom to be sold in connection with the Capcom Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Capcom Copyrighted Works in any manner without the express authorization of Capcom;

   c. passing off, inducing, or enabling others to sell or pass off any products as Capcom Products or any other product produced by Capcom, that is not Capcom's or not produced under the authorization, control, or supervision of Capcom and approved

by Capcom for sale under the Capcom Trademarks and/or Capcom Copyrighted Works;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Capcom, or are sponsored by, approved by, or otherwise connected with Capcom;

e.  further infringing the Capcom Trademarks and/or Capcom Copyrighted Works and damaging Capcom's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Capcom, nor authorized by Capcom to be sold or offered for sale, and which bear any of the Capcom Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Capcom Copyrighted Works;

2) Entry of an Order that, upon Capcom's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like Amazon, SHEIN, Temu, and Walmart shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Capcom Trademarks and/or Capcom Copyrighted Works;

3) That certain Defendants account for and pay to Capcom all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the

amount of damages for infringement of the Capcom Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Capcom be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Capcom Trademarks;

5) As a direct and proximate result of certain Defendants' infringement of the Capcom Copyrighted Works, Capcom is entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Capcom's election prior to any final judgment being entered, Capcom is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Capcom is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 24th day of September 2025.      Respectfully submitted,


/s/ Martin F. Trainor
Martin F. Trainor
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com

*Counsel for Plaintiff Capcom Co., Ltd.*